IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02580-WJM-NYW

ALBERT SACK,

        Plaintiff,

vs.

COLORADO FARM BUREAU INSURANCE COMPANY,

        Defendant.

---

## PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

---

COMES NOW, Plaintiff, by and through his attorneys, Dugan & Campbell, PLLC, and files this Motion to Alter or Amend Judgment pursuant to Fed.R.Civ.P 59 as follows:

## I. CERTIFICATION OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1, Plaintiff's counsel has conferred in good faith with opposing counsel about the subject motion. Defendant opposes the relief requested herein.

## II. BACKGROUND

Pursuant to Fed.R.Civ.P 59(e), a party may move to alter or amend a judgment within 28 days following the entry of the judgment. The Court granted Defendant's Motion for Partial Summary Judgment on October 27, 2021. That Order dismissed Plaintiff's claim for bad faith and his claim filed pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116. This Motion is timely filed.

Plaintiff contends that the Court should alter or amend its Order granting summary judgment on the aforementioned claims as there is newly discovered evidence that has been presented to the Court in Plaintiff's pending Motion for Sanctions and to Continue Final Pretrial

Conference ("Motion for Sanctions") that was filed on August 9, 2021 and in his Supplement to Motion for Sanctions that was filed on October 11, 2021. [**DOCS 47 and 58**]. Moreover, both Colorado law and the existence of disputed material facts preclude an entry of summary judgment. Plaintiff respectfully requests the Court reconsider its ruling based upon Plaintiff's arguments set forth below.

### III. LAW AND ARGUMENT

A party can seek relief pursuant to Fed. R. Civ. P. 59(e) based on (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

**A.      Newly Discovered Evidence**.

Defendant filed its Motion for Partial Summary Judgment on June 11, 2021. [**DOC 42**]. Plaintiff filed his Response on July 1, 2021 and Defendant filed its Reply on July 15, 2021. [**DOCS 43 and 45**].

On July 27, 2021, an hour and a half prior to a scheduled telephone conference to discuss the Final Pretrial Order that was due to the Court on July 28, 2021, Defense counsel emailed counsel unredacted claim notes and reports that had previously been redacted and a Liability CCR Report that had never been disclosed. Based on that late disclosure, Plaintiff filed a Motion for Sanctions on August 9, 2021. [**DOC 47**]. On October 11, 2021, Defense counsel emailed Plaintiff's counsel additional new evidence that included another Liability CCR Report that had never been disclosed. Based on that newly disclosed evidence, Plaintiff filed a Supplement to Motion for Sanctions. [**DOC 58**]. Plaintiff's Motion for Sanctions and supporting exhibits and Plaintiff's Supplement to Motion for Sanctions and supporting exhibits set forth the newly

discovered evidence and its significance in detail. Because the newly discovered evidence and its significance has been previously been presented to the Court and in the interest of efficiency, Plaintiff respectfully requests that the Court review Plaintiff's Motion, Supplement and exhibits in their entirety as it does not seem sensical or efficient to cut and paste those existing arguments into this Motion. However, Plaintiff has provided a summary below.

1. **Summary of Plaintiff's Motion for Sanctions, Supplement to Motion for Sanctions, and supporting exhibits.**

On July 27, 2021, defense counsel emailed documents to Plaintiff's counsel that included a report from Defendant's claim file titled "Liability CCR Report." That report, dated 9/25/19, contained an evaluation by adjuster Scott McCormac that had previously been redacted. Defense counsel also sent a second Liability CCR Report dated 11/21/19 that had never been disclosed as Defendant and its counsel realized it was "missing" from Defendant's disclosures. [**Ex. 1, Liability CCR Reports, SACK000768-000771, SACK000725-000743**].

Significantly, previously redacted information contained in the evaluation portion of the 9/25/19 report valued settlement of Plaintiff's claim in the range of $175k-$200k. [**Ex. 1, SACK000737-000738**]. Based on the information that was disclosed on July 27, 2021, Plaintiff filed his Motion for Sanctions. [**DOC 47**]. In that Motion, Plaintiff requested leave to file a Sur-Reply to his Response to Defendant's Motion for Partial Summary Judgment, leave to designate a bad faith expert/industry standard expert, leave to depose the adjuster, Scott McCormac, who created the evaluation, and requested that the Court Order Defendant to produce unredacted claim notes that are not properly privileged and to produce a proper privilege log. Defendant filed a Response to Plaintiff's Motion for Sanctions on August 25, 2021 and Plaintiff filed a

Reply on September 2, 2021. [**DOC 53 and 54**]. Plaintiff's Motion for Sanctions is pending with the Court.

Although Plaintiff's Motion for Sanctions is still pending, the Court granted the request to Continue the Final Pretrial Conference and reset that conference for October 12, 2021. [**DOC 49**]. Counsel communicated via email on October 5th, 6th, and 7th regarding additions and changes to the Final Pretrial Order before submitting it to the Court. On October 11, 2021, less than 24 hours prior to the Final Pretrial Conference, defense counsel emailed Plaintiff's counsel another Liability CCR report that had never been disclosed. Based on that late disclosure, Plaintiff filed a Supplement to Motion for Sanctions on October 11, 2021. [**DOC 58**]. That newly disclosed Liability CCR Report was dated February 11, 2019, and was the first of five Liability CCR Reports that Defendant has disclosed thus far[1]. [**Ex. 1, SACK 000768-000771**]. As set forth in detail in Plaintiff's Supplement to Motion for Sanctions, in the "Outstanding To Do" section of that Report, Mr. McCormac suggested "Maybe the $5,000 we've already paid under Medpay would be prudent to tender as we've already considered them enough to tender once?" [**Ex. 1, SACK000770-000771**]. Curiously, that inquiry and recommendation was deleted from the subsequent report dated 6/5/19. [**Ex. 1, SACK000728**]. Moreover, there was no reference or discussion in the claim notes that addresses or discusses Mr. McCormac's recommendation to make what would be considered a $5,000 Fisher payment under the UIM policy. In fact, no payment was ever offered or made to Plaintiff until April 1, 2020 and the amount of the Fisher payment that was offered at that time was for $2,944.00. The fact that a Fisher payment was recommended on February 11, 2019, and then disregarded and deleted from the subsequent Report never to be addressed again is significant to Plaintiff's bad faith and C.R.S §§ 10-3-1115 and 1116 claims and must be considered by the jury.

---

[1] The five Liability CCR Reports that have been disclosed are dated 2/11/19, 6/5/19, 8/21/19, 9/25/19, and 11/21/19.

Additionally, this report is significant is because it contains a "Medical Bills" section showing that Defendant had in its possession $35,221.00 in bills for Plaintiff's treatment as of the date of that report, 2/11/19. **[Ex. 1, SACK000769]**. One basis for Plaintiff's bad faith and statutory claims is that Defendant did not timely evaluate Plaintiff's claim. [DOC__ Plaintiff's Complaint paragraph __; DOC Scheduling Order, p. __Plaintiff's Statement of Claim]. Thus, this report establishes what documentation Defendant had in its possession regarding Plaintiff's damages as of that date and shows the adjuster had summarized that information in a report submitted to his supervisors. **[Ex. 1, Sack000769]**. However, Defendant waited over 7 months after the 2/11/19 report was generated to request any IMEs or retain any experts to evaluate Plaintiff's claims. Again curiously, the first request for an IME was finally made on 9/25/19 after Mr. McCormac evaluated the settlement range at $175k-$200k. **[Ex. 2[2], 9/25/19 email from S. McCormac]**. Plaintiff and his counsel were unaware of this evaluation because it was never disclosed or communicated to Plaintiff.

Like the $5,000 Fisher payment recommendation from the 2/11/19 Report, the written evaluation completed by Scott McCormac on 9/25/19 noting $90k in accurately billed medical expenses and a recommended settlement range of $175-$200 was deleted from the subsequent Liability CCR Report dated 11/21/19 and was never referenced or discussed in the claim notes or anywhere else in the file. **[Ex. 1, 11/21/19 report, Sack000739-000743]**. Plaintiff's deadline to respond to Defendant's Motion for Partial Summary Judgment was July 2, 2021. The 9/25/19 evaluation and the 11/21/19 report were not disclosed to Plaintiff until July 27, 2021, and the 2/11/19 Report was not disclosed to Plaintiff until October 11, 2021.

As set forth in Plaintiff's Motion for Sanctions, Plaintiff made a formal discovery request for Defendant's claim file on March 26, 2021. Defendant responded that it had produced all

---

[2] Ex. 2 in support of this Motion was marked as Ex. 10 in support of Plaintiff's Motion for Sanctions.

non-privileged documents in response to that request. [**Ex. 3[3], Defendant's Discovery Responses**]. On August 3, 2021, Plaintiff's counsel again requested that defense counsel confirm "pursuant to F.R.C.P. 26(g), you are representing that you have disclosed the entire claim file for Mr. Sack's claim and that any pages that have been withheld in their entirety are properly listed in a privilege log. . . ." [**Ex. 4[4], 8/3/21 email correspondence to defense counsel**]. On August 6, 2021, defense counsel responded that he had "provided the entire claim file." [**Ex. 5[5], 8/6/21 letter from defense counsel**]. That was clearly not the case.

Mr. McCormac's 9/25/19 evaluation that settlement in the range of $175k-$200k was reasonable and his recommendation to make a Fisher payment that was contained in the 2/11/19 Report are material pieces of evidence that must be considered by the jury in considering the reasonableness of Defendant's conduct in handling Plaintiff's claim. *See Powell v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 16-cv-0964-WJM-CBS, p. 14 (D. Colo. Apr. 17, 2018)(in denying Defendant's Motion for Summary Judgment, stating "Powell points to evidence of Allstate's internal communications, from which a jury could agree that while communicating about settlement, Allstate 'unreasonably lowball[ed] Mr. Powell's claim' by offering amounts lower than it had already calculated and approved internally, and by misrepresenting to Powell's attorney the valuations Allstate had already calculated for Powell's claim."). Accordingly, this newly discovered evidence is sufficient to alter or amend the Court's ruling on Defendant's Motion for Partial Summary Judgment. *See Zolman v. Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011)("What constitutes reasonableness [of an insurer's conduct] under the circumstances is ordinarily a question of fact for the jury.").

---

[3] Ex. 3 in support of this Motion was marked as Ex. 14 in support of Plaintiff's Motion for Sanctions.
[4] Ex. 4 in support of this Motion was marked as Ex. 11 in support of Plaintiff's Motion for Sanctions.
[5] Ex. 5 in support of this Motion was marked as Ex. 12 in support of Plaintiff's Motion for Sanctions.

**B.    Manifest Injustice**.

The Court must alter or amend its ruling granting summary judgment in favor of Defendant to prevent manifest injustice as there is a genuine dispute as to material facts regarding the reasonableness of Defendant's conduct that must be considered by the jury.

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it is essential to the proper disposition of the claim. *Wright v. Abott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). In analyzing a motion for summary judgment a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The newly discovered evidence set forth in Plaintiff's argument above creates a genuine dispute as to material facts regarding whether Defendant's conduct was reasonable in adjusting Plaintiff's claim. Both the Fisher payment recommendation by Scott McCormac in February 2019 and his settlement evaluation in September 2019 were deleted from the subsequent reports and then hidden from Plaintiff and his counsel in litigation. Instead of considering or addressing Mr. McCormac's recommendation and settlement evaluation, Defendant decided to hire defense counsel. [**Ex. 2, 9/25/19 email from S. McCormac**]. When viewing this evidence in a light

most favorable to Plaintiff, this evidence must be considered by a jury, as a jury could likely find that Defendant's conduct in this regard was unreasonable. *Zolman* at 490.

In determining whether an insurer acted unreasonably, the relevant determination "is one of reasonableness under the circumstances." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 582 (Colo. App. 2003). "Bad faith . . . encompasses the entire course of conduct and is cumulative." *Id.* As set forth in Defendant's Motion for Partial Summary Judgment and Plaintiff's Response, there are numerous other material facts that support a jury finding that Defendant's conduct was not reasonable under the circumstances. Thus, Plaintiff respectfully requests that the Court alter or amend its ruling dismissing Plaintiff's claims to prevent manifest injustice.

Defendant knew 7 days after the collision that Plaintiff was experiencing severe headaches and pain, that his symptoms were worsening, that he was trying to get in to see Dr. Mason and that Dr. Mason had treated him after a 2014 collision, prior to the 2017 collision. [**DOC 43, Plaintiff's Additional Facts 1, 2, and 3; DOC 42, Defendant's Fact 11**]. On March 12, 2018, Defendant received a bill for $22,000 for injections Plaintiff had completed at North Suburban. [**DOC 43, Plaintiff's Additional Fact 6**]. Defendant was not contacted by Plaintiff's counsel until September 14, 2018. [**DOC 42, Defendant's Fact 14**]. Defendant did not mention or request an IME until September 25, 2019, two years and three months after the June 22, 2017 collision. [**DOC 42, Defendant's Fact 13**]. Defendant concluded that only the first three months of Plaintiff's treatment (June 2017-September 2017) was related to the collision, but did not offer a Fisher payment for that treatment until April 1, 2020. [**DOC 42, Defendant's Facts 7 and 8**]. Defendant retained two doctors that had never treated Plaintiff a total of $22,400.42 to evaluate Plaintiff's injuries and paid $7,828.75 to another expert to perform a biomechanical

analysis.  [**DOC 43, Plaintiff's Additional Facts 13, 14 and 15**].  Defendant never communicated with any of Plaintiff's treating doctors, including Dr. Mason, even though Defendant knew as early as 7 days following the collision that Dr. Mason had treated Plaintiff after both the 2014 and the 2017 collisions.  [**DOC 43, Plaintiff's Additional Facts 1, 3, 5, 11 and 12**].  Dr. Mason issued a report on April 29, 2021, that rebutted Dr. Lambden's opinions.  [**DOC 45, Defendant's Response to Additional Facts 18**]. Defendant relied on a biomechanical analysis that was based solely on photographs of Plaintiff's vehicle and never requested to inspect Plaintiff's vehicle as part of that analysis even though their insured still maintained possession of the vehicle at that time that analysis was performed.  [**DOC 43, Plaintiff's Additional Facts 21, 22, and 23**].  Defendant took photographs of Plaintiff's vehicle on June 28, 2017.  [**DOC 42, Defendant's Facts 11 and 12**].  Defendant's retained biomechanical expert did not perform his analysis and complete a report until March 31, 2020.  [**DOC 42, Defendant's Fact 6**].

The jury must be allowed to consider the facts presented in Defendant's Motion and Plaintiff's Response to determine if Defendant's conduct was reasonable under the circumstances.  *See Powell,* Civil Action No. 16-cv-0964-WJM-CBS, p. 13 (noting a jury could find that the insurer's delay in initiating its own investigation was unreasonable and reflected bad faith); *Baker v. Allied Prop. & Cas. Ins. Co.,* 939 F. Supp. 2d 1091, 1110 (D. Colo. 2013)(noting insurer could have begun their analysis of UIM benefits owed without ever knowing what plaintiff's settlement was with the underlying tortfeasor).  Like in *Powell*, Defendant has simply recited its view of the facts and asserted that its conduct was reasonable.  However, that is up to the jury to determine if their investigation was reasonable.  *Zolman*, 261 P.3d at 497.

Additionally, C.R.S. § 10-3-1113(4) provides that "[i]n determining whether an insurer's delay or denial was reasonable, the jury may be instructed that willful conduct of the kind set forth in section 10-3-11104(1)(h)(I) to (1)(h)(XIV) is prohibited and may be considered if the delay or denial and the claimed injury, damage or loss was caused or contributed to by such prohibited conduct.: *See also Peiffer*, 940 P.2d at 971 (jury may consider if conduct violated Unfair Claims Settlement Practices Act ("UCSPA")). The UCSPA prohibits the following claim settlement practice: "Refusing to pay claims without conducting a reasonable investigation based upon all available information." C.R.S. § 10-3-1104(1)(h)(IV).

The Court stated as follows in its Order granting Defendant's Motion:

> While questions of fact exist as to the extent of Plaintiff's purported injuries . . . Plaintiff does not rely on any evidence <u>made available to Defendant at the time of its decision indicating that Defendant had notice that it should have covered certain damages and as a result rendering its conduct unreasonable</u>. Rather . . . the one medical report actually provided to Defendant by the time of its decision <u>did not opine to the cause of Plaintiff's medical complaints such that Defendant could reasonably conclude that the purported injuries were tied to the accident.</u>

[**DOC 68, pp. 5-6**].

Dr. Mason opined that Plaintiff suffered an exacerbation of his injuries as a result of the 2017 collision and related Plaintiff's ongoing chronic neck pain to the 6/22/17 collision. [**DOC 43, Plaintiff's Additional Fact 4**]. Despite the fact that her report was not issued until litigation ensued forcing Plaintiff to solicit a causation opinion from his own doctor, presumably Dr. Mason's opinion regarding causation was the same at the time Defendant completed its evaluation of Plaintiff's claim. However, Defendant chose not to inquire as to her opinions on causation even though she treated Plaintiff after both the 2014 and 2017 collisions.

Treating physicians rarely include causation opinions in their regular medical records. A treating physician's job is to treat a patient's symptoms and injuries, unlike a retained physician,

such as Dr. Lambden, who is paid to give an opinion on causation. Defendant recognizes this, stating "As to the Plaintiff's treating physicians, one can examine the reports of the various doctors to note that although as a temporal basis, i.e., the Plaintiff's treatment did occur after the car accident, none of these doctors actually provide an opinion, <u>typical of non-retained doctors</u>, that the Plaintiff's condition is related to this automobile accident." [**DOC 45, p. 7, emphasis added**].

To put the burden on the insured to obtain a causation opinion from their doctor to try to prevent litigation is inconsistent with the law that it is the insurance company's obligation to conduct a reasonable investigation. C.R.S. § 10-3-1104(1)(h)(III). Placing that burden on an insured, to solicit and often times pay for a causation opinion from their treatment provider, so that the insurer has that information for its evaluation, is clearly contrary to Colorado law.

A jury could and would likely determine Defendant did not act reasonably in not communicating with Dr. Mason (or any of Plaintiff's other treatment providers) under the specific circumstances presented here where Dr. Mason treated plaintiff after both the 2014 and 2017 collisions. Especially considering the fact that Defendant's experts discussed and considered the 2014 collision as part of their evaluations, but where neither of Defendant's retained expert doctors had ever treated or met Plaintiff prior to the IMEs they performed in October 2019 and January 2020. Accordingly, the Court should alter or amend its Order granting Defendant's Motion for Partial Summary Judgment to prevent manifest injustice.

WHEREFORE, Plaintiff respectfully requests that pursuant to Fed. Civ. P. 59(e) the Court enter an Order altering or amending its Order granting Defendant's Motion for Partial Summary Judgment such that Plaintiff's second and third claims for relief remain viable and are no longer dismissed.

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on November 23, 2021, I electronically filed PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses, with courtesy copies sent directly to:

Ellis J. Mayer, #12408
NATHAN DUMM & MAYER, P.C.
7900 E. Union Avenue, Suite 600
Denver, CO 80237
emayer@hdm-law.com
*Attorneys for Defendant*

*s/ Heather D. Campbell*
Heather D. Campbell